UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CARRIE SKAINS, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 4:24-CV-1272-X-BP |
| | § | |
| TRINITY VALLEY SCHOOL, | § | |
| | § | |
| *Defendant.* | § | |

# JURY INSTRUCTIONS

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or defendants in arriving at your verdict.

**Preponderance of the Evidence**

Plaintiff Carrie Skains has the burden of proving each element of her case by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find that Plaintiff Skains has failed to prove any element of its claim by a preponderance of the evidence, then she may not recover on that claim.

**Evidence**

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and

reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence. These charts and summaries are not evidence or proof of any facts. You should determine the facts from the evidence.

**Stipulations**

A "stipulation" is an agreement. When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

The parties stipulate to the below facts, which are set forth in individually numbered paragraphs, and which require no proof.

1. Carrie Skains served as the Human Resources Director at Trinity Valley School ("Trinity") from 2012 until January 6, 2025.
2. Carrie Skains was the sole Human Resources employee.
3. Carrie Skains reported directly to the Head of School.

4. Carrie Skains was a member of the Administrative Leadership Team.
5. Carrie Skains was never formally disciplined, suspended, or demoted during her employment at Trinity.
6. Carrie Skains's title and benefits were never reduced.
7. Carrie Skains was never expressly told she would be fired, and was never expressly told she had to resign or face discipline.
8. Carrie Skains made a verbal complaint to then-Head of School Blair Lowry after a February 16, 2023 meeting, but did not expressly state she was being treated differently because she was a woman.
9. On April 26, 2023, Trinity received a report from a student's parents that their child observed the school's former piano instructor's penis during a one-on-one piano lesson. Trinity promptly placed the instructor on leave, consulted counsel, contacted CPS, and ultimately terminated him.
10. The Board's December 18, 2024 email to the Trinity community stated that it was a summary of the T&M report.
11. Trinity is a private, independent school in Fort Worth, Texas.
12. Blair Lowry served as Trinity's Head of School from July 2020 until May 2024.
13. Trent Muse was employed by Trinity as a piano instructor during the 2022–2023 academic year.
14. On June 12, 2024, Skains filed a Charge of Discrimination with the EEOC, Charge No. 450-2024-08403, alleging sex discrimination, hostile work

environment, and retaliation.

15. On September 10, 2024, Skains executed an additional Charge of Discrimination alleging retaliation for having filed her June 12, 2024, EEOC Charge. The September filing retained EEOC Charge No. 450-2024-08403.

16. On December 18, 2024, Trinity sent the Board Email—a communication concerning the T&M report—to the Trinity World Distribution List.

17. An EEOC mediation concerning Skains's EEOC Charge was scheduled for December 19, 2024, at 9:00 a.m.

18. The members of the Board's Investigative Committee were Brant Martin, Palmer Lummis, Geeth Chettiar, and Catherine (Kit) Ulrich.

19. Skains's annual compensation at the time of her separation from Trinity was $111,530.

**Witnesses**

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on

the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

**Impeachment by Witness's Inconsistent Statements**

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent

mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

## Expert Witnesses

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

## No Inference from Filing Suit

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

* * *

## Plaintiff Skains's Claims

I will now instruct you on the law that you must apply to Plaintiff Skains's claims.

### A. Plaintiff Skains' Sex-Discrimination Claims under Title VII and Texas Labor Code Chapter 21

Plaintiff Skains claims that Defendant Trinity discriminated against her because of her sex by assigning her substantial additional work responsibilities, without additional compensation, from February 2023 through January 2025. Defendant Trinity denies the claim and contends the assignments were made for legitimate operational reasons.

Because the standards for proving causation are different in Title VII (federal law) and Chapter 21 (Texas law), the instructions as to each law are below the questions in the verdict form.

### B. Plaintiff Skains' Retaliation Claims Under Title VII and Texas Labor Code Chapter 21

Plaintiff Skains claims that Defendant Trinity retaliated against her for engaging in activity protected by Title VII of the Civil Rights Act of 1964 and Chapter 21 of the Texas Labor Code. She claims that she complained to her supervisor about alleged sex-based treatment by Adam Wojtelwicz between February 2023 and June 2024, and that she filed EEOC charges on June 12 and September 10, 2024. She claims that after these reports, Defendant Trinity assigned her additional work without additional compensation.

Defendant Trinity denies Plaintiff Skains's claims and contends that the assignments were made for legitimate operational reasons, including the preexisting allocation of payroll functions to Human Resources, temporary or project-based staffing needs, and the allocation of reporting responsibilities to employees with access to the necessary information. Defendant Trinity contends that the assignments would have occurred regardless of any protected activity.

Because Title VII and Chapter 21 phrase the standards slightly differently, the instructions for each law are below the relevant questions.

### C. Plaintiff Skains's Defamation Claim

Plaintiff Skains claims that Defendant Trinity defamed her by publishing two allegedly false statements in an email sent to the Defendant Trinity community on December 18, 2024. You will answer separate questions about each statement. In answering the questions about each statement, you are to consider that statement in the context of the December 18, 2024 email as a whole and the surrounding circumstances, as a person of ordinary intelligence would understand it.

Statement 1: "Evidence in T&M's investigation indicates that Ms. Lowry, Ms. Skains, Mr. Snyder and Ms. McNutt, who were aware of the incident, kept the information largely to themselves in the days that followed because they were concerned that sharing it would be detrimental to Mr. Muse if the exposure of his penis to the child was indeed accidental."

The portions of Statement 1 stating that Plaintiff Skains knew of the incident and kept the information largely within a limited group are true and are not at issue.

You may consider only whether the statement falsely or substantially falsely attributed to Plaintiff Skains the motive stated after the word "because."

Statement 2: "Other than reviewing the contents of Mr. Muse's employment file and his School-issued laptop, Ms. Lowry, Mr. Snyder, Ms. McNutt and Ms. Skains did not conduct any internal inquiries or take other steps to determine if Mr. Muse had engaged in inappropriate interactions with other Trinity students."

Defendant Trinity denies Plaintiff Skains's claims of defamation regarding these two statements. It contends that each statement accurately or substantially accurately summarized T&M's findings; that the complete email, including its attribution and qualifications, must be considered in context; and that Defendant Trinity did not know either statement was false or entertain serious doubts about its truth.

This case also potentially involves the application of a conditional privilege. Because the email concerned matters of common interest to Defendant Trinity and its community, the jury must determine whether Defendant Trinity proved that the statements in the email it sent out went only to persons having an interest or duty in the subject of the email. If so, then the jury must determine if Plaintiff Skains proved by clear and convincing evidence that the harm to her resulted from malice. If not, then the jury must determine if Defendant Trinity knew, or should have known, in the exercise of ordinary care, that the Statement was false and had the potential to be defamatory.

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Malice" means that, at the time Trinity published the Statement —

1. Defendant Trinity knew the Statement was false as it related to Plaintiff Skains, or

2. Defendant Trinity made the Statement with a high degree of awareness that it was probably false, to an extent that Defendant Trinity in fact had serious doubts as to the truth of the Statement.

"Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

"False" means that a statement is neither true nor substantially true. A statement is "substantially true" if, in the mind of the average person, it is no more damaging to the person affected by it than a literally true statement would have been.

"Defamatory" means an ordinary person would interpret the statement in a way that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach the person's honesty, integrity, virtue, or reputation.

## Issues Not for Your Decision

You are not deciding whether Mr. Muse engaged in misconduct; whether Defendant Trinity or any administrator, attorney, consultant, or Board member

adequately responded to student-safety concerns; or whether any statement or theory not submitted to you was defamatory or retaliatory.

**Consider Damages Only if Necessary**

If Plaintiff Skains proves discrimination or retaliation by a preponderance of the evidence, or proves defamation under the burdens stated above, you must determine the damages caused by the particular assignment or statement you found unlawful. You should not interpret the fact that I have given instructions about damages as an indication that I believe Plaintiff Skains should, or should not, win this case. It is your first task to decide whether Defendant Trinity is liable. I am instructing you on damages only so that you will have guidance if you decide that Defendant Trinity is liable and that Plaintiff Skains is entitled to recover money from Defendant Trinity.

**Damages**

Plaintiff Skains must prove her damages by a preponderance of the evidence. Your award must be based on evidence and not on speculation or guesswork. On the other hand, Plaintiff Skains need not prove the amount of her losses with mathematical precision, but only with as much definitiveness and accuracy as the circumstances permit.

**A. Discrimination and Retaliation Damages Under Title VII and Chapter 21**

With regard to discrimination and retaliation, you should consider only compensatory damages Plaintiff Skains proves were caused by the particular assignment or assignments you found discriminatory or retaliatory, such as out-of-

pocket loss and emotional pain, suffering, inconvenience, mental anguish, or loss of enjoyment of life.

There is no exact standard for determining nonpecuniary damages. You must determine an amount that will fairly compensate Plaintiff Skains for harm caused by the discriminatory or retaliatory assignment or assignments and that has a rational basis in the evidence. Do not include interest in any amount you award.

### 1. Punitive Damages Under Title VII

In addition to actual damages, you may consider punitive damages only if you first find Defendant Trinity liable for at least one discriminatory or retaliatory assignment and if the Court submits this issue to you. Punitive damages are designed to punish a defendant and to deter similar conduct in the future.

You may award punitive damages only if Plaintiff Skains proves by a preponderance of the evidence that: (1) the individual who engaged in the discriminatory act or practice was acting in a managerial capacity; (2) he or she engaged in the discriminatory act or practice while acting in the scope of his or her employment; and (3) he or she acted with malice or reckless indifference to Plaintiff Skains' federally protected right to be free from discrimination.

An action is in "reckless indifference" to Plaintiff Skains's federally protected rights if it was taken in the face of a perceived risk that the conduct would violate federal law. Plaintiff Skains is not required to show egregious or outrageous

discrimination to recover punitive damages. Proof that Defendant Trinity engaged in intentional discrimination, however, is not enough in itself to justify an award of punitive damages.

In determining whether the person who made the discriminatory or retaliatory assignment was a supervisor or manager for Defendant Trinity, consider the type of authority that person had over Plaintiff Skains and the authority for employment decisions Defendant Trinity authorized that person to exercise. You must make this determination with respect to the person who made the assignment you found retaliatory. The assignment must have been made in the face of a perceived risk that doing so would violate federal law.

If Plaintiff Skains proves those facts, then you may award punitive damages unless Defendant Trinity proves by a preponderance of the evidence that the discriminatory or retaliatory act was contrary to its good-faith efforts to prevent discrimination or retaliation in the workplace.

In determining whether Defendant Trinity made good-faith efforts to prevent discrimination or retaliation in the workplace, you may consider whether it adopted anti-discrimination or anti retaliation policies, whether it educated its employees about federal anti-discrimination or anti retaliation law, how it responded to Plaintiff Skains' complaint of discrimination, and how it responded to other complaints of discrimination.

If you find that Defendant Trinity acted with malice or reckless indifference to Plaintiff Skains's rights and did not make a good-faith effort to comply with the law,

then in addition to any other damages you find Plaintiff Skains is entitled to receive, you may, but are not required to, award Plaintiff Skains an additional amount as punitive damages for the purposes of punishing the Defendant Trinity for engaging in such wrongful conduct and deterring Defendant Trinity and others from engaging in such conduct in the future. You should presume that Plaintiff Skains has been made whole for her injuries by any actual damages you have awarded.

If you decide to award punitive damages, you should consider the following in deciding the amount:

1. How reprehensible Defendant Trinity's conduct was. You may consider whether the harm Plaintiff Skains suffered was physical or economic or both; whether there was violence, intentional malice, or reckless disregard for human health or safety; whether Defendant Trinity's conduct that harmed Plaintiff Skains also posed a risk of harm to others; whether there was any repetition of the wrongful conduct or there was past conduct of the same sort that harmed Plaintiff Skains. Consider the nature of that conduct, whether it was repeated, and the type and extent of the harm it caused Plaintiff Skains. You may not punish Defendant Trinity for the underlying Muse matter, student safety issues, or any conduct that you did not find retaliatory.

2. How much harm Defendant Trinity's wrongful conduct caused Plaintiff Skains.

3. What amount of punitive damages, in addition to the other damages already awarded, is needed, considering Defendant Trinity's financial condition, to punish

Defendant Trinity for its conduct toward Plaintiff Skains and to deter Defendant Trinity and others from similar wrongful conduct in the future.

The amount of any punitive-damages award should bear a reasonable relationship to the harm caused by the retaliatory conduct.

**B. Defamation Damages**

With regard to each defamatory statement you found actionable, you should consider only damages Plaintiff Skains proves were caused by that statement: (a) injury to reputation sustained in the past; (b) injury to reputation that, in reasonable probability, Plaintiff Skains will sustain in the future; (c) mental anguish sustained in the past; and (d) mental anguish that, in reasonable probability, Plaintiff Skains will sustain in the future. You must state damages separately for each statement on the verdict form.

Consider the elements of damages listed and none other. Consider each element separately. Do not award the same loss twice, including across the discrimination, retaliation and defamation claims. Do not include interest in any amount of damages you find.

Exemplary damages are different in kind from the damages you have already considered. They are not compensation for injury. They are a penalty: an amount you may award, in your discretion, to punish Defendant Trinity for conduct meeting the standard described below, and to deter Defendant Trinity and others from similar conduct in the future. You should presume that Plaintiff Skains has been made whole for her injuries by any compensatory damages you have awarded.

Because this case concerns statements on a matter of public concern, you may consider exemplary damages only if you have already found, by clear and convincing evidence, that Defendant Trinity published the statement knowing it was false or with a high degree of awareness that it was probably false.

In addition, Texas law requires Plaintiff Skains to prove by clear and convincing evidence that the harm she suffered resulted from malice. "Malice" in this question has a different meaning from the earlier question you answered. Here, "malice" means a specific intent by Defendant Trinity to cause substantial injury or harm to Plaintiff Skains. A party acts with specific intent when it desires to cause the consequences of its act, or believes the consequences are substantially certain to result from it. "Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

Defendant Trinity is a corporation and can act only through individuals. Malice may be attributable to Defendant Trinity because of an act of an individual if, but only if: (1) Defendant Trinity authorized the doing and the manner of the act; or (2) the individual was employed as a vice-principal or in a managerial capacity and was acting in the scope of that role; or (3) Defendant Trinity or a vice-principal of Defendant Trinity ratified or approved the act. A person is a "vice-principal" of Defendant Trinity if that person is an officer of Defendant Trinity; or has authority to employ, direct, and discharge an employee of Trinity; or has been confided the management of the whole or a department or division of Defendant Trinity.

If you find malice, you may — but you are not required to — award exemplary damages. In determining the amount of exemplary damages, if any, you are to consider: (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability of Defendant Trinity; (4) the situation and sensibilities of the parties concerned; (5) the extent to which the conduct offends a public sense of justice and propriety; and (6) the net worth of Defendant Trinity. The amount of any exemplary damages should bear a reasonable relationship to the harm caused to Plaintiff Skains. Your award must not reflect bias, prejudice, or sympathy toward any party.

* * *

### Duty to Deliberate

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the

notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question on the verdict form.

You may now proceed to the jury room to begin your deliberations.

* * *

**Further Instructions**: You, the jury, must answer all the questions on this special verdict form, unless otherwise instructed. To understand the issues being submitted to you, you may wish to read over the entire special verdict form before beginning to answer the questions.

Please answer the following questions in numerical order, beginning with question No. 1. Follow all instructions carefully. Answer all questions "yes" or "no," unless otherwise instructed.

If you do not understand any questions, or if you wish to communicate with the Court on any other subject, you must do so in writing through the court security officer. At no time should any communication indicate how the jury stands on any question on this special verdict form.

When you have completed the special verdict form, please have the foreperson sign the verdict form and notify the court security officer that you have reached a verdict.

# JURY QUESTIONS

## QUESTION 1: Title VII and Chapter 21, Adverse Action

**Has Plaintiff Skains proved that Defendant Trinity's decision to assign her substantial additional work responsibilities without additional compensation was an "adverse employment action?"**

An adverse employment action for sex discrimination must involve some harm with respect to an identifiable term or condition of employment.

Title VII and the Texas Labor Code do not cover every decision an employer makes that might have some tangential effect on those identifiable terms or conditions of employment. An employment action that does not affect job duties, compensation, or benefits is not an adverse employment action.

Answer: "Yes" or "No" No

*If you answered "Yes" to the above question, proceed to Question 2. If you answered "No," proceed to Question 4.*

## QUESTION 2: Title VII Discrimination, Causation

**Has Plaintiff Skains proved that she would not have been assigned substantial additional work responsibilities without additional compensation in the absence of—in other words, but for—her sex?**

It is unlawful for an employer to discriminate against an employee with respect to the terms, conditions, or privileges of employment because of the employee's sex. An employer may, however, may assign additional work to an employee without additional pay for other reasons, good or bad, fair or unfair.

To prove unlawful discrimination, Plaintiff Skains must prove by a preponderance of the evidence that:
1. Defendant Trinity assigned additional work to Plaintiff Skains without additional compensation; and
2. Defendant Trinity would not have assigned additional work to Plaintiff Skains in the absence of—in other words, but for—her sex.

Plaintiff Skains does not have to prove that unlawful discrimination was the only reason Defendant Trinity assigned her additional work without additional pay. But she must prove that Defendant Trinity's decision to assign her additional work without additional pay would not have occurred in the absence of such discrimination.

If you find that the reasons Defendant Trinity has given for assigning work to Plaintiff Skains without additional pay are unworthy of belief, you may, but are not required to, infer that Defendant Trinity was motivated by Plaintiff Skains' sex.

Answer: "Yes" or "No" ____________

*Proceed to Question 3.*

**QUESTION 3: Chapter 21 Discrimination, Causation**

**Was sex a motivating factor in Defendant Trinity's decision to assign substantial additional work responsibilities to Plaintiff Skains without additional compensation?**

A "motivating factor" in an employment decision is a reason for making the decision at the time it was made. There may be more than one motivating factor for an employment decision.

If you do not believe the reason Defendant Trinity has given for assign substantial additional work responsibilities to Plaintiff Skains without additional compensation, you may, but are not required to, infer that Defendant Trinity was motivated by Plaintiff Skains's sex.

Answer: "Yes" or "No" ____________

*Proceed to Question 4.*

## QUESTION 4: Title VII Retaliation

**Do you find that Plaintiff Skains would not have been assigned substantial additional work responsibilities without additional compensation but for her protected activity?**

To prove unlawful retaliation as to a particular assignment under Title VII, Plaintiff Skains must prove by a preponderance of the evidence that:
1. Plaintiff Skains engaged in protected activity;
2. Defendant Trinity assigned the additional work to Plaintiff Skains without additional compensation, and the assignment was materially adverse; and
3. Defendant Trinity's decision to assign Plaintiff Skains additional work without additional compensation was on account of her protected activity.

You need not find that the only reason for Defendant Trinity's decision was Plaintiff Skains's protected activity. But you must find that Defendant Trinity's decision to assign Plaintiff Skains additional work without additional compensation would not have occurred in the absence of—but for—her protected activity.

"Protected activity" includes opposing an employment practice that is unlawful under Title VII by making a charge of discrimination, or testifying, assisting, or participating in any manner of an investigation, proceeding, or hearing under Title VII. If the claim is for opposing an employment practice, the plaintiff must prove that he or she had a reasonable good-faith belief that the practice was unlawful under Title VII.

A reasonable, good-faith belief that discrimination occurred requires a subjective belief that the employer's behavior was discriminatory. In addition, the belief must be objectively reasonable in light of the circumstances.

A "materially adverse" action is one that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

If you disbelieve the reasons Defendant Trinity has given for a particular assignment, you may, but are not required to, infer that the assignment would not have occurred but for protected activity. Your ultimate task is to decide whether Plaintiff Skains proved but-for causation, not merely whether Defendant Trinity's reasons were mistaken, unwise, or incomplete.

Answer: "Yes" or "No" Yes

*Proceed to Question 5.*

## QUESTION 5: Chapter 21, Retaliation

**Did Defendant Trinity assign additional work responsibilities to Plaintiff Skains without additional compensation because of Plaintiff Skains's report of discrimination, opposition to a discriminatory practice, making or filing a charge of discrimination, or testifying, assisting, or participating in any manner in a discrimination investigation, proceeding, or hearing under Chapter 21 of the Texas Labor Code?**

Plaintiff Skains must establish that without her report of or opposition to a discriminatory practice, making or filing a charge of discrimination, or testifying, assisting, or participating in any manner in a discrimination investigation, proceeding, or hearing under Chapter 21 of the Texas Labor Code, if any, Defendant Trinity's assignment of additional work responsibilities, if any, would not have occurred when it did. There may be more than one cause for an employment decision. Plaintiff Skains need not establish that her report, opposition or Charges, if any, were the sole cause of Defendant Trinity's decision.

If you do not believe the reason Defendant Trinity has given for assigning the additional work responsibilities, you may, but are not required to, infer that Defendant Trinity would not have assigned them to Plaintiff Skains but for her protected activity.

Answer: "Yes" or "No" Yes

*Proceed to question 6.*

## QUESTION 6: Damages

*If you answered "Yes" to Questions 2, 3, 4, or 5, answer this question.*

**What sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiff Skains for the damages, if any, you have found Defendant Trinity caused Plaintiff Skains?**

Answer in dollars and cents for the following items and none other:

1. Past pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life. $150,000.00

2. Future pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life. $0

3. Wages and benefits from February 16, 2023 to January 6, 2025 as a result of the additional work without additional pay. $110,000.00

*If you answered other than $0 to the above question, proceed to Question 7. Otherwise, proceed to Question 11.*

## QUESTION 7: Mitigation

Defendant Trinity claims that Plaintiff Skains failed to mitigate her damages. Plaintiff Skains has a duty under the law to mitigate her damages, that is, to exercise reasonable diligence under the circumstances to minimize her damages. To succeed on this defense, Defendant Trinity must prove, by a preponderance of the evidence: (a) that there was substantially equivalent employment available; (b) Plaintiff Skains failed to use reasonable diligence in seeking those positions; and (c) the amount by which Plaintiff Skains's damages were increased by her failure to take such reasonable actions.

**Do you find that Plaintiff Skains failed to reduce her damages through the exercise of reasonable diligence in seeking, obtaining, and maintaining substantially equivalent employment after the date of the discrimination or retaliation you found in Questions 2, 3, 4, or 5?**

Answer: "Yes" or "No" No

*If you answered "Yes" to the above question, proceed to Question 8. Otherwise, proceed to Question 9.*

<u>QUESTION 8: Mitigation of Damages</u>

**How much would Plaintiff Skains have earned had she exercised reasonable diligence under the circumstances to mitigate her damages?**

Answer in dollars and cents, if any: $________

*Proceed to Question 9.*

**QUESTION 9: Punitive Damages, Liability**

**Do you find that Plaintiff Skains should be awarded punitive damages?**

Answer: "Yes" or "No" No

*If you answered "Yes" to the above question, proceed to Question 10. Otherwise, proceed to Question 11.*

## QUESTION 10: Punitive Damages, Amount

**What sum of money should be assessed against Defendant Trinity as punitive damages?**

Answer in dollars and cents: $_________

*Proceed to Question 11.*

## QUESTION 11: Defamation, Publication

**Did Defendant Trinity publish the following statements on December 18, 2024?**

Statement A: "Evidence in T&M's investigation indicates that Ms. Lowry, Ms. Skains, Mr. Snyder and Ms. McNutt, who were aware of the incident, kept the information largely to themselves in the days that followed because they were concerned that sharing it would be detrimental to Mr. Muse if the exposure of his penis to the child was indeed accidental."

Statement B: "Other than reviewing the contents of Mr. Muse's employment file and his School-issued laptop, Ms. Lowry, Mr. Snyder, Ms. McNutt and Ms. Skains did not conduct any internal inquiries or take other steps to determine if Mr. Muse had engaged in inappropriate interactions with other Trinity students."

"Publish" means to communicate orally, in writing, or in print to a person (other than Plaintiff Skains), who is capable of understanding and does understand the matter communicated.

Statement A Answer: "Yes" or "No" Yes
Statement B Answer: "Yes" or "No" Yes

*If you answered "Yes" as to either Statement A or B to the above question, proceed to Question 12. Otherwise, have the foreperson sign the verdict form and tell the court security officer.*

## QUESTION 12: Defamation

**Were the statements in Question 11 defamatory concerning Plaintiff Skains?**

"Defamatory" means an ordinary person would interpret the statement in a way that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt, or ridicule, or financial injury, or to impeach the person's honesty, integrity, virtue, or reputation.

A statement is defamatory if the statement is defamatory considered in the context of other facts and circumstances sufficiently expressed before or otherwise known to the reader or listener.

Statement A Answer: "Yes" or "No" Yes
Statement B Answer: "Yes" or "No" Yes

*If you answered "Yes" as to either Statement A or B to the above question, proceed to Question 13. Otherwise, have the foreperson sign the verdict form and tell the court security officer.*

## QUESTION 13: Conditional Privilege

Defendant Trinity may be entitled to conditional privilege if it proves the statements it published went only to persons having an interest or duty in the matter to which the communications relate.

**Did Defendant Trinity prove that the statements in the email it sent out went only to persons having an interest or duty in the subject of the email?**

Statement A Answer: "Yes" or "No" No

Statement B Answer: "Yes" or "No" No

*If you answered "Yes" as to either Statement A or B to the above question, proceed to Question 14. Otherwise, proceed to Question 15.*

## QUESTION 14: Defamation, Malice

**Do you find that, at the time Defendant Trinity published the Statement —**

**1. Defendant Trinity knew the Statement was false as it related to Plaintiff Skains, or**

**2. Defendant Trinity made the Statement with a high degree of awareness that it was probably false, to an extent that Defendant Trinity in fact had serious doubts as to the truth of the Statement?**

Statement A Answer: "Yes" or "No" ____________
Statement B Answer: "Yes" or "No" ____________

*If you answered "Yes" as to either Statement A or B to the above question, proceed to Question 16. Otherwise, have the foreperson sign the verdict form and tell the court security officer.*

## QUESTION 15: Defamation, Awareness of Falsity

**Did Defendant Trinity know, or should it have known, in the exercise of ordinary care, that the Statement was false and had the potential to be defamatory?**

"Ordinary care" concerning the truth of the statement and its potential to be defamatory means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

Statement A Answer: "Yes" or "No" Yes
Statement B Answer: "Yes" or "No" Yes

*If you answered "Yes" as to either Statement A or B to the above question, proceed to Question 16. Otherwise, have the foreperson sign the verdict form and tell the court security officer.*

## QUESTION 16: Defamation, Substantial Truth

**Were the Statements in Question 11 true or substantially true at the time they were made as it related to Plaintiff Skains?**

A statement is "substantially true" if, in the mind of the average person, it is no more damaging to the person affected by it than a literally true statement would have been.

In connection with this question, you are instructed that Defendant Trinity has the burden to prove substantial truth by a preponderance of the evidence.

Statement A Answer: "Yes" or "No" No
Statement B Answer: "Yes" or "No" No

*If you answered "No" as to either Statement A or B to the above question, proceed to Question 17 for Statement A, Question 18 for Statement B, or both if both answers above are "Yes." Otherwise, have the foreperson sign the verdict form and tell the court security officer.*

## QUESTION 17: Defamation, Damages from Statement A

**What sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiff Skains for her injuries, if any, that were proximately caused by Statement A?**

Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. Do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find. Answer separately in dollars and cents for damages, if any.

1. Injury to reputation sustained in the past. Answer: $ 430,000.00

2. Injury to reputation that, in reasonable probability, Plaintiff Skains will sustain in the future. Answer: $ 430,000.00

3. Mental anguish sustained in the past. Answer: $ 430,000.00

4. Mental anguish that, in reasonable probability, Plaintiff Skains will sustain in the future. Answer: $ 430,000.00

5. Lost earnings. Answer: $ 75,000.00

6. Lost earning capacity. Answer: $ 0

QUESTION 18: Defamation, Damages from Statement B

**What sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiff Skains for her injuries, if any, that were proximately caused by Statement B?**

Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. Do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find. Answer separately in dollars and cents for damages, if any.

1. Injury to reputation sustained in the past. Answer: $ 430,000.00

2. Injury to reputation that, in reasonable probability, Plaintiff Skains will sustain in the future. Answer: $430,000.00

3. Mental anguish sustained in the past. Answer: $430,000.00

4. Mental anguish that, in reasonable probability, Plaintiff Skains will sustain in the future. Answer: $430,000.00

5. Lost earnings. Answer: $75,000.00

6. Lost earning capacity. Answer: $0

*Proceed to Question 19.*

## QUESTION 19: Liability for Exemplary Damages

*If you answered yes to Questions 17 or 18, answer this question. Otherwise, have the foreperson sign the verdict form and tell the court security officer.*

**Do you find by clear and convincing evidence that the harm to Carrie Skains resulted from malice?**

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Malice" for the purpose of this question means—

1. a specific intent by Trinity Valley School to cause substantial injury to Carrie Skains; or
2. an act or omission by Trinity Valley School,
   a. which when viewed objectively from the standpoint of Trinity Valley School at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
   b. of which Trinity Valley School has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Statement A Answer: "Yes" or "No" Yes

Statement B Answer: "Yes" or "No" Yes

*Proceed to Question 20.*

## QUESTION 20: Defamation, Exemplary Damages

*If you answered "Yes" to any part of Questions 19, answer the corresponding part of Question 20. Otherwise, do not answer that part.*

**What sum of money, if any, if paid now in cash, should be assessed against Defendant Trinity and awarded to Plaintiff Skains as exemplary damages for the conduct found in response to Question 19?**

Statement A Answer: $3,150,000.00
Statement B Answer: $3,150,000.00

*Have the foreperson sign the verdict form and tell the court security officer.*

We the jury have unanimously agreed to the answers to the above questions and returned such answers in open court as our verdict in this cause.

Nicole Thomas ______________________ 9-4-2026 ______________________
Foreperson Date